# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY

TONI FLOYD and CHERI NICHOLSON
On behalf of themselves and all those similarly situated

        Plaintiffs,

                Civil Action No. _____

v.

ANNE HAYNIE, in her official capacity as Chief Judge of the Jefferson County District Court

        Defendant.

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

  The Named Plaintiffs seek a preliminary injunction on behalf of the affected class of people facing eviction barring the Jefferson County District Court from conducting hearings in forcible detainer actions until the Jefferson County District Court has provided Constitutionally-adequate notice to people facing eviction of the time and place of their forcible detainer hearings. Currently, the information Defendant has provided to people with forcible detainer actions pending against them is either inaccurate as to the time and place of the Zoom Eviction Hearing or is not reasonably calculated to give people facing eviction an opportunity to present their objection.

  In other words, Defendant has violated the Due Process Rights of Jefferson County residents who are facing eviction and this Court needs to **stop all eviction proceedings** until the Jefferson District Court implements processes and procedures to guarantee the minimum possible fairness required by the United States Constitution.

## STATEMENT OF FACTS

  The two Named Plaintiffs are each facing eviction in the middle of a global pandemic and ongoing economic crisis. Each named Plaintiff tried to appear at their Zoom Eviction Hearings on January 27th using the information the Jefferson District Court provided to them. [Compl., ¶¶

1

39-58; 59-70, generally.] Because (effective January 25th, 2021) the Jefferson District Court changed the number and access code of Zoom Eviction Hearings without telling anyone, both Plaintiffs were delayed, confused, and misdirected by the information provided by the Jefferson District Court and, as a result, appeared late to their Zoom Eviction Hearings. Both Named Plaintiffs had a judgment of eviction entered against them. [Compl., ¶¶ 29-31.]

More recently, the Jefferson District Court has changed the information it provides to people facing eviction. [Compl., ¶¶ 36-38.]



This information is *also* not sufficient to provide people with the meaningful notice of the time and place of their Zoom Eviction Hearing required by the Due Process Clause of the United States Constitution.

## ARGUMENT

**This Court should issue a preliminary injunction to prevent further violations of the due process rights of people facing eviction in Jefferson County**

In evaluating requests to issue preliminary injunctive relief under Fed.R.Civ.P. 65(a), "district court[s] must consider: (1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiff may suffer irreparable harm absent the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of an injunction upon the public interest." *Abney v. Amgen, Inc.*, 443 F.3d 540, 546 (6th Cir. 2006) (internal quotations omitted) (quoting *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nasvhille & Davidson Co.*, 274 F.3d 377, 400 (6th Cir. 2001) *cert. denied*, 535 U.S. 1073 (2002)). These considerations "are factors to

be balanced, not prerequisites that must be met." *Jones v. City of Monroe, MI*, 341 F.3d 474, 476 (6th Cir. 2003) (citing *In re Delorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985)).

Here, Plaintiffs satisfy all of the criteria for the issuance of a preliminary injunction: 1) they can establish a substantial likelihood of success on the merits; 2) an injunction is necessary to prevent immediate, ongoing and irreparable harm; 3) the issuance of an injunction will not harm the Defendant and any pecuniary harm to others is strongly outweighed by the constitutional, physical, financial, and emotional damage that people facing eviction will experience absent an injunction; and 4) the public interest strongly favors issuance of an injunction in this case because "it is always in the public interest to prevent the violation of a party's constitutional rights." *G&V Lounge, Inc. v. Michigan Liquor Control Com'n*, 23 F.3d 1071, 1079 (6th Cir. 1994) (citing *Gannett Co., Inc. v. DePasquale*, 443 U.S. 368 (1979)); *Planned Parenthood Association v. City of Cincinnati*, 822 F.2d 1390, 1400 (6th Cir. 1987)). Additionally, [as the CDC has repeatedly said](#) and which multiple studies support, preventing evictions in a global pandemic 1) facilitates self-isolation, 2) allows state and local authorities to more easily implement stay-at-home and social distancing directives, and 3) protects public health by preventing people from having to "double-up" or move into congregate housing, such as homeless shelters.

## A. PLAINTIFFS HAVE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS OF THEIR FOURTEENTH AMENDMENT CLAIM.

In their Complaint, Plaintiffs assert on behalf of a class a fundamental violation of their procedural due process rights. In another case originating in the Western District of Kentucky, the United States Supreme Court recognized that, of course, the Due Process Clause guarantees people facing eviction to "a constitutional minimum: 'An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to…afford them an opportunity to present their objections." *Greene v. Lindsey*, 456 U.S. 444, 449-450 (1982) quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). For the reasons that follow, Plaintiffs have a

substantial likelihood of prevailing on the merits of their claims under the Fourteenth Amendment either because courts examining a notice's "sufficiency" must test it

> with reference to its ability to inform people of the pendency of proceedings that affect their interests. In arriving at the constitutional assessment, we look to the realities of the case before us: In determining the constitutionality of a procedure established by the State to provide notice in a particular class of cases, 'its effect must be judged in the light of its practical application to the affairs of men as they are ordinarily conducted.'
>
> *Greene* at 451 quoting *North Laramie Land Co. v. Hoffman*, 268 U.S. 276, 283, 45 S.Ct. 491, 494, 69 L.Ed. 953 (1925).

In short, it the Jefferson District Court has provided people facing eviction with two notices at two different times. For most of the pandemic, the Court provided people with a Notice which contains inaccurate information that has proven to deprive people of an opportunity to appear at their Zoom Eviction Hearing. This inaccurate information has clearly, undeniably harmed the Named Plaintiffs and unknown others during the first week of the Jefferson District Court's new Zoom Eviction Hearing procedures. The Court's first notice is the functional equivalent of changing the location of a hearing without informing one side of the contest. It is hard to imagine a more fundamental abridgment of a person's right to notice and an opportunity to be heard.

The Jefferson District Court's most recent "notice" is ***in many ways worse*** than the information it provided to people facing eviction with its previous notice. This new notice does not provide the actual Zoom login information, Zoom telephone number, or Zoom access code to people facing eviction. Instead, it tells people "Remote court attendance is mandatory" and provides the court's homepage to "find your remote courtroom information." See Plaintiffs' Complaint, **Exhibit 8**. Unlike the previous document that Plaintiffs received, this new document does not provide the telephone number of the clerk's office to call in case a person does not have a reliable phone or computer or has "trouble". Unlike the previous document, the Jefferson District Court provides people facing eviction with *no information* about how to appear for their Zoom Eviction Hearing and instead assumes a person facing eviction has access to the internet

4

when state officials estimate that roughly 5% of Kentucky's children "do not have internet access at their homes or do not live near places with internet access."[1]

Both notices used by the Jefferson District Court are facially deficient, especially when "the reasonableness of the notice provided must be tested with reference to the existence of 'feasible and customary' alternatives and supplements to the form of notice chosen.

Thinking even superficially about the problem of providing notice—actual, meaningful notice reasonably calculated to provide the time and place of their hearing—to people facing eviction would yield the following insights:

- People facing eviction are going to be a group of people who will be more stressed, poorer,[2] and with fewer resources to access:
    - the internet,
    - public transportation and goods and services that require transportation,
    - services like rental assistance and legal aid attorneys,
    - Zoom Eviction Hearings.
- People facing eviction will likely have multiple demands on their time, whether it's

---

[1] "Kentucky's digital divide is a challenge for kids trying to learn in cities, rural towns," Courier-Journal, October 12, 2020, at https://www.courier-journal.com/story/news/education/2020/10/12/thousands-of-kentucky-students-lack-internet-access/5643679002/

Whatever the percentage of Kentuckians who lack access to the internet, certainly, the percentage is higher among people who are facing eviction in a pandemic. It simply cannot be the case that *requiring* a person to access a website and navigate to another page on the website and sift through various court login and access code information to *discover* the information they need to appear at their Zoom Eviction Hearing is constitutionally adequate notice when so many obvious, easy alternatives can be made to improve the information the Jefferson County District Court is providing to people facing eviction. The new information provided by the Court is actively *worse* than the old information, more openly hostile to people facing eviction.

[2] According to the Federal Reserve, the unemployment rate for the lowest quartile of wage earners in America is 20%. For reference, 20% unemployment is Depression-era levels of unemployment. "The damage from COVID-19 is concentrated among already challenged groups. Federal Reserve staff analysis indicates that unemployment is likely above 20 percent for workers in the bottom wage quartile, while it has fallen below 5 percent for the top wage quartile." In other words, while the economic disruption caused by the pandemic may appear "over" to many elected officials and their friends, **a quarter of Americans are experiencing an ongoing Depression alongside an ongoing pandemic**. For Kentuckians who live at the edge of disaster, that edge has never eroded under their feet more quickly.

- working, searching for work, providing (like our Named Plaintiffs) childcare or dependent care, navigating our state's broken system for accessing unemployment insurance benefits, applying for rental assistance.
- Because they are less likely to have their own transportation, everything they do will take longer and be more of a hassle for them to accomplish.
- Providing the *actual information needed to appear at a Zoom Eviction Hearing* in the notice itself is required by the Constitution, a good idea, and easy to do.
- Providing a *phone number* and *email address* for people who need to request an accommodation, need additional assistance, or have a question is required by the Constitution, a good idea, and easy to do.
- If you think the information to appear at a Zoom Eviction Hearing might change at some point in the future, you should *tell people facing eviction* that the information you've provided might change and how to check if it has changed before the actual Zoom Eviction Hearing.[3]
- If you are going to call landlords and landlords' attorneys to help them appear at Zoom Eviction Hearings, you should require landlords to provide contact information for people facing eviction at the time they file their forcible detainer action so you can afford *people facing eviction in a pandemic* the same courtesy and notice.
- If, *in addition to providing the actual information needed to appear at a Zoom Eviction Hearing*, you are going to provide a website for people to check the accuracy of the Zoom Eviction Hearing information you already provided, you should provide a specific link to a webpage that contains *only* eviction-specific information (not the homepage of your website with the expectation that people will know how to navigate it).[4]
- While not required by the Constitution, providing people facing eviction with the phone numbers, websites, and other contact information to allow them to access the

---

[3] For example, a phone number that has a recorded message to inform people the night before of any changes to the information to access tomorrow's Zoom Eviction Hearings.

[4] While not required by the Constitution, it would be very easy for a Court to include a QR code that links directly to the most current information about how to appear at a Zoom Eviction Hearing on the Court's website. Creating a QR code to send a person directly to a specific website on the internet is easy.

Like this: 

- city's rental assistance programs and find legal assistance is a good idea and easy to implement. It might save some lives and save the Court some time.[5]
- While not required by the Constitution, providing people facing eviction with information about the CDC's Order protecting people from eviction for nonpayment of rent through March 31st and the Declaration form they can deliver to their landlord to avail themselves of those protections is a good and easy thing to do. It might save lives and unburden the Court's docket.

**The Jefferson County District Court is doing none of this—providing neither the constitutionally-required or the nice-to-have information—right now.**

Kentucky has a problem with notice in forcible detainer actions. As noted above, a major case on the subject, *Greene v. Lindsey*, originated right here in Louisville, arising from the notice practices of Jefferson County Sheriffs in the 1970s and 80s. And, the Kentucky Supreme Court recognized that in the "over two hundred years of forcible detainer law" in Kentucky, [r]eversals of forcible detainer judgments for insufficient notice are not uncommon." *Shinkle v. Turner*, 496 S.W.3d 418, 423 (Ky. 2016). While past may be prologue, the Defendant's decisions 1) to change the location of Zoom Eviction Hearings with no notice to people facing eviction and 2) to rely on a *website*[6] as the *exclusive* means by which people can learn how to appear for their one-time, high-stakes Zoom Eviction Hearing obviously violates the Constitution's guarantee of notice and an opportunity to be heard independent of the Commonwealth's history of violating the due process rights of people facing eviction. Plaintiffs have a substantial likelihood of success on the merits.

## B. AN INJUNCTION IS NECESSARY TO SAVE THE PLAINTIFFS FROM IRREPARABLE HARM.

As explained more fully above, the Jefferson County District Court deprives Plaintiffs of their fundamental rights under the Fourteenth Amendment. Both the Supreme Court and the

---

[5] This is what the Jefferson County Circuit Court did a decade ago during the foreclosure crisis. The Circuit Court's foreclosure cover sheet worked and helped people navigate a confusing and scary moment. See **Exhibit 1**.

[6] Not just a website, but a web address that then requires the user to navigate to a separate page (no instructions provided with the Jefferson District Court's "notice") and find the eviction information among a list of other kinds of proceedings.

Sixth Circuit have held that the violation of constitutional rights is an irreparable injury sufficient to justify the grant of a preliminary injunction. *Connection Distributing*, 154 F.3d at 288 (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparably injury")); *Overstreet v. Lexington-Fayette Urban County Government*, 305 F.3d 566, 578 (6th Cir. 2002). Simply put, the violation of an individual's constitutional rights alone is sufficient to establish irreparable harm.

Moreover, the harm in this case is not merely speculative. Both Named Plaintiffs have had judgments of eviction entered against them after the Jefferson District Court's constitutionally infirm notices and practices deprived them of their right to appear at their Zoom Eviction Hearing. Moreover, hundreds of additional people face eviction in the next two weeks alone: all of them have received the same constitutionally deficient notices from the Jefferson County District Court that Named Plaintiffs received. **Evictions are a primary driver of the ongoing spread of SARS-CoV-2.** Researchers from Duke University recently concluded in a paper published by the National Bureau of Economic Research, that our nation's failure to protect people from eviction between March and November 2020 led to 40% of all the COVID-19 deaths and 14% of all the COVID-19 infections.[7] The "notices" the Jefferson County District Court provides to people face eviction don't just violate the Constitution; they are a threat to public health and safety. It is no hyperbole to say this is a matter of life and death.

---

[7] "Had such policies [eviction and utility disconnection moratoria] been in place across all counties (i.e., adopted as federal policy) from early March 2020 through the end of November 2020, our estimated counterfactuals show that policies that limit evictions could have reduced COVID-19 infections by 14.2% and deaths by 40.7%. For moratoria on utility disconnections, COVID-19 infections rates could have been reduced by 8.7% and deaths by 14.8%. Housing precarity policies that prevent eviction and utility disconnections have been effective mechanisms for decreasing both COVID-19 infections and deaths."

Published by the National Bureau of Economic Research, the full paper, "Housing Precarity & the COVID-19 Pandemic: Impacts of Utility Disconnection and Eviction Moratoria on Infections and Deaths Across US Counties" is available here: https://www.nber.org/papers/w28394.

## C. AN INJUNCTION WILL DO NO HARM AND WILL SERVE THE PUBLIC INTEREST

In contrast to the immediate and irreparable injury to Plaintiffs and the proposed Class, the Defendant will suffer no injury from the issuance of a preliminary injunction. In fact, there are no governmental interests being served by Defendant's continued violation of the due process rights of people facing eviction. Issuance of the injunction would actually serve the public interest because "it is always in the public interest to prevent the violation of a party's constitutional rights." *G & V Lounge*, 23 F.3d at 1079; *Dayton Area Visually Impaired Persons, Inc. v. Fisher*, 70 F.3d 1474, 1490 (6th Cir. 1995) (public "as a whole" has interest in protecting constitutional liberties). To the extent landlords might suffer some delay in prosecuting evictions during a pandemic as a result of this Court's injunction, landlords can use that time to do what they should be doing anyway: working with their customers to apply for the rental assistance available to help people in an ongoing global pandemic and economic crisis. Furthermore, the CDC's CDC's Order currently prohibits landlords from setting out people[8] from their homes for nonpayment of rent. The CDC's Order does not prevent landlords from filing and prosecuting an eviction to the point of set-out, however. Therefore, the vast majority of landlords who are prosecuting eviction cases right now in Kentucky fall into two categories: 1) landlords prosecuting evictions despite being unable to avail themselves of the only remedy an forcible detainer proceeding can offer (possession of the premises) and 2) landlords who have created a legal pretext to claim that their eviction is not for nonpayment of rent by terminating people's month-to-month leases during a pandemic and filing forcible detainer proceedings when the homerenter does not vacate the home in a pandemic. Neither category of landlord can claim a legitimate injury by any delay a preliminary injunction would create.

Neither the Defendant nor the public would suffer any injury from the issuance of a preliminary injunction, and, as shown above, such an injunction will not only protect the rights

---

[8] People who know about the CDC's protections and take the necessary step of filing

guaranteed under the U.S. Constitution, but will also protect public health and slow the spread of SARS-CoV-2 in our community.

## CONCLUSION

Plaintiffs' request for preliminary injunctive relief should be granted because there is a substantial likelihood that they will prevail on the merits of their claims. The "notices" provided by the Jefferson County District Court are obviously inadequate under any circumstances but especially in this extraordinary moment.

Dated: February 1, 2021  Respectfully Submitted,
/s/ Ben Carter
Ben Carter
KENTUCKY EQUAL JUSTICE CENTER
222 South First St., Suite 305
Louisville, KY 40202
502-303-4026
ben@kyequaljustice.org